Good morning, Your Honors, and may it please the Court, this is Michael Sussman speaking on behalf of the appellant, Keisha Falu. Good morning. At S.A. 13 through 15 of the first decision, the District Court sustained the appellant's failure to promote claim as against all the defendants, quote, in the Court's view, based on these allegations, Falu has pleaded with particularity that she was not given the promotions because of her gender. Indeed, based on these allegations, it is plausible that due to her sex that Falu was treated less favorably than her similarly situated male counterparts. Thus, all of these allegations are sufficient to give the defendants fair notice of the plaintiff's claims and the defendant's motion to dismiss the gender discrimination claim is denied. That's at S.A. 15. At S.A. 26, in the summary judgment decision with regard to the failure to promote claim, the claim that the judge was addressing what I just read, the Court indicated that it had granted defendants motion to dismiss appellant's failure to promote claim, contrary to what we believe it had actually done with this part of the defendant's motion to dismiss. After the first decision, the motion to dismiss, the parties litigated the failure to promote to all the defendants, not just the two early promotions in which Jones directly participated. It seems to me that on the motion to dismiss, the district court dismissed everything except as to failure to promote as to the two defendants, Jones and was it Gross? But that's inconsistent with the language I just read to the court in a separate prong of that decision. Well, you're you're you're you're plucking out some perhaps inartfully phrased language, but if you don't think so, hold on, don't interrupt me, please, even if we're on the phone, the the there are other parts of the opinion that make it clear that that that all the claims were dismissed except as to the probation claims against Gross and Jones, and then the claims against Gross were discontinued voluntarily. So the summary judgment was simply promotion as to Jones, that's that you don't think that's correct? Oh, I don't. The judge distinguished in his opinion on the motion to dismiss three different sections. He started with what he calls section 1983, which didn't say state, in fact, a separate claim. Page SA 13 starts with a heading B, gender discrimination and failure to promote, which is the central claim we raised with regard to all of the individuals. The judge concluded that section with the language I just read, which doesn't distinguish between defendants in any way, it doesn't suggest any of them would be absent of liability for the pattern of promotion discrimination, which was alleged, and if the contrary determination is the one the court goes with, then the motion to dismiss was improvidently decided. The amended complaint clearly provides, as I think the district court recognized, sufficient basis to believe that the pattern of promotions were gender based and a motion to dismiss plainly would have been inappropriate at that point. At the end of at the end of the motion to dismiss, the district court directed the clerk of the court to terminate the proceedings as to the county, Dubois and Decker. I mean, doesn't that language make it crystal clear what the district court intended? Oh, I think that's an error because it's so contrary to the substance of reasoning of the district court of 13 through 15. I think that's the part that's erroneous pretty clearly. How could one square the court's analysis of, quote, gender discrimination and failure to promote in the language I read with that direction, since the pleading makes clear that Ms. Ballou had been denied eight promotions, said 20, but in fact, as it turned out, there were eight promotions she was denied between August of 2014 and March of 2016, both when the list was in effect and when the list ended and provisional appointments were then being made. Well, when you had this confusion, Mr. Sussman, you did do a lot of this work. We see you on a regular basis. Why didn't you simply move at the district court for reconsideration in light of what you saw as the inconsistency between the order and the language and the motion to dismiss decision and the decision on summary judgment? Why didn't you simply do that? Instead of arguing up here that the court misconstrued its earlier decision, we're supposed to figure out what the judge was thinking and read between the lines when you had a simple remedy. Why didn't you do that? My view of it was that the judge's decision was plain with regard to the gender discrimination and failure to promote. And I just say that we have the ability then to decide that the motion to dismiss was properly interpreted to include the broader base relief that you said the district court mistakenly did, presumed with regard to when the man went to summary judgment. In some way, this is, even though it's an important argument, it's also somewhat immaterial because we have the right to appeal the motion to dismiss when a final judgment is entered. Did you do that? Did you argue that the motion to dismiss was improperly granted? We did. Our argument is twofold. Our argument is the motion to dismiss was improperly granted. And if that's how you read it, and certainly that the summary judgment motion was also improperly granted, as well as the hospital work environment element of this, which is the third part of the decision on the motion to dismiss. It's all bound up in a certain way together. If you believe that the motion to dismiss meant to dismiss the gender discrimination and failure to promote claim, contrary to those three pages of the judge's writing and reasoning, but entirely against the jurisprudence of this court, you couldn't grant the motion to dismiss on the failure to promote claim because there were clear allegations against Decker, against Jones, against DuBois, putting Gross to the side because we've agreed to dismiss Gross. So if this court were to engage in de novo review with regard to that aspect of it, it would conclude that the motion was improperly granted. With regard to summary judgment, with regard to that matter, we would have had a totally different motion, the one that we in fact argued, at least I argued on summary judgment, which is that the full record demonstrates a pattern of gender discrimination, which is never refuted by the county in its papers. The county submitted a nine page 56.1 statement, which doesn't in any way justify the promotions which it made in this period of time, which were the subject of discovery in the litigation. The third argument we made is with regard to the hospital work environment claim or the harassment claim. There, the district court judge says that even if you plead and specify, as we did, a pattern of promoting women who essentially slept with their supervisors in order to get the promotion and not promoting other women who refused to engage in that conduct, that's not sufficient to constitute a claim. I mean, I think that's frankly an outrageous statement. It's plainly sufficient. Well, how, hold on a second. How is that? There may be a claim there. What I have difficulty understanding is how it's a hostile work environment claim. Because an individual in the work environment has a right to be freely considered for promotions. Part of that, that's part of one's work environment. If in order to gain promotions, which come up repetitively, you have to essentially subject yourself to the treatment that's alleged in the complaint. It's pervasive. It subjects someone to intimidation and ridicule in the fabric of the work environment. It sounds more like a quid pro quo claim. You know, if I don't sleep with them, they won't promote me, as opposed to severe or pervasive conduct. But again, as this court has mentioned on a number of occasions, the nomenclature is not as significant as the fact that it is clear, factual pleading in the complaint, which- You have one minute, Mr. Sussman. You have one minute, by the way. You've saved two minutes for rebuttal. Thank you. Which makes out the claim. I agree. That could be viewed as a pro quo sexual harassment claim. But I also think it's fundamentally a hostile work environment to subject women who are co-equal, if not superior to their male colleagues, to the requirement that if you're going to gain promotions, this is how you have to do it. And to say the complaint inadequately, factually sets that forth is frankly erroneous. It's plain that it sets it forth clearly enough. It gives specific examples, but people involved, the promotion positions they received are the favorite positions they received. I think I probably ran out of time. I thank you for your indulgence. All right. Thank you. We'll hear from the other side. Good morning, Your Honors, and may it please the court. My name is Sharon Worthy-Steagall, and I represent the county and the defendant in this case. With respect to Mr. Sessom's first allegation that the court didn't mean to dismiss this case, I just want to refer the court to pages of the appendix 1, 7, 9, 11, 12, 17, and 18, in which it is stated on eight occasions, twice on page 18, that the court dismisses all claims against Du Bois, Becker, and the county. And it reiterates it at page 26 of the summary judgment motion. I don't know how much clearer it could be. Mr. Sessom's allegation that because the court stated on page 15 of the appendix that defendant's plural motion to dismiss the gender claim is denied is erroneous on its face because the court had already met and decided the threshold issue as to whether or not he allegedly raised enough factual allegations in the complaint to show Decker's personal involvement and Du Bois' personal involvement and or widespread practice to show it on the male claim. And the court had already decided that with respect to Decker and Du Bois, he did not meet his burden to establish those claims in the amended complaint. Instead, it was just conclusory and legal conclusions that were couched as factual allegations. But as this court has said, that's not enough to provide dismissal of the 12B6. With respect to Decker, almost all of his claims are grouped together with subordinate personnel. The only ones that are specific to him are in paragraph 19, which is JA 13 and 15. And that's just that he's a corrections officer, a correctional administrator, that he failed to obtain a list of eligibles, which the list was with the motion to dismiss. So clearly there was a list of eligibles and the court below looked at that. And that he failed to canvass and he failed and he promoted directly off the eligible list. But that doesn't state a claim for personal involvement. As a matter of law, he doesn't have to canvass. And as a matter of law, he has to appoint directly off the eligibility list because these correction officers are bound by the civil service law. The civil service law that says that any appointment to that position shall be made by the selection of one of three persons certified by the Civil Service Commission as standing highest on the eligibility list. And so therefore, if someone is automatically eligible, he does not have to canvass all those persons. With respect to Du Bois, they found no supervisory liability. There's no allegation, any factual allegation that he directly participated in the alleged constitutional violation. There's just an allegation that because he was the appointing authority, he saw these promotions. But there's no allegation that he participated in them or that he failed to remedy a wrong because there are no factual allegations to say that he was aware of a discriminatory policy or even aware of a hostile work environment that persons allegedly were only being promoted because of preferential treatment. There's no allegation that he created a policy under which unconstitutional practices occurred. And there's no allegation that he knew about anything that his subordinates were doing. And most of all, there's no allegation that anyone violated the civil service law by making those promotions from corrections officers to corrections sergeants. With respect to a hostile work environment, how to respond to the argument that this was a hostile environment because preferences were given to women who were willing to have relationships with male supervisors? Why is that not a plausible hostile work environment claim? Well, it has to be permeated with discriminatory intimidation, ridicule, and insult that is severe and pervasive. And to alter the terms and conditions of her employment. There's no allegation that it altered the terms and conditions of her employment because there's no allegation that she was even reachable on the civil service list to even be qualified in the first place for that promotion. So there's actually... This is a separate claim from the promotion claim, as I understand it. In other words, putting aside the issue of promotion, the environment was hostile because in order to get anywhere, you were still subjected to this offensive conduct. That's the argument. Well, the court looked at the frequency of the discriminatory allegations, and there were only five instances where it occurred. One was in 2008, where someone was promoted. And another one did not allege that it was a corrections officer. And the other three were persons who allegedly were given preferential treatment because of their personal relationship. But it still fails to state any factual allegations of how that affected her. There isn't any allegations that she was injured by those preferential treatments, or that she was equally qualified for them, or anything along those lines, or that she was even in the same area when they occurred. She might have been working a different shift. There just are not enough factual allegations. They're just completely conclusory. And with respect to the quid pro quo, the classic quid pro quo occurs when an employee is required to engage in unwanted sexual acts. That would fall squarely within the definition of a tangible employment action to support this claim. But in this particular case, there are no allegations that anyone ever approached her, or that she rebuffed anyone's sexual advances, other than one conclusory. I did not mean to suggest that she had a quid pro quo claim. I was really suggesting that some of these other women might have. But in any event, she doesn't allege anything with respect to a quid pro quo as to her. No, it seems more like a power and more preference claim, which this court has repeatedly held as not necessarily a hostile work environment claim. So I just don't see how she was subjected to a hostile work environment claim. This is not enough. There's not an abusive working relationship. What about the summary judgment motion? The summary judgment motion, at the time that it was made, the only person who was still in the case was Kenneth Jones. And the evidence and undisputed allegations show that he was the acting jail administrator from 2012, December 2012 to January 2013. And during that time, he did make two motions. At that time, there's no allegation and there's no proof and no evidence in the record that Salute was even eligible to be promoted. And after 2013, when Mr. Jones left and was no longer the jail administrator, he had no personal involvement in any promotions whatsoever. And the transcripts are completely clear on that and the evidence. So I think she had become she didn't become eligible on the civil service list until May of 2014, was it? Correct. Well, the first and the first appointment that she could have had was in December of 2014. But there was no time within which Kenneth Jones was acting jail administrator that she was eligible for a promotion at all. So and in terms of supervisory liability as well, there's no allegation that he directly directly participated in anything or that he learned of any kind of wrong and failed to remedy it or created a policy or that he was grossly negligent. But so there's no issue of fact for which a jury under which a jury could find that Kenneth Jones was responsible for failing to promote Salute to the position of corrections sergeant, particularly since she wasn't even reachable at that time under civil service. Well, anything else? The court also found that he failed to state a Monell claim, either because Du Bois is a policymaker was did not he did not allegedly took any actions or made any decision that actually caused her appellate constitutional deprivation. And assuming that he is the policymaker, there are not. He failed to state a plausible claim that after learning of any alleged violations, he chose to ignore the policies or acted in disregard of a substantial risk to appellate. There's also not an allegation other than just a conclusory one that he ratified any decision made by a subordinate that was unconstitutional or caused the plaintiff appellant from injury his reliance on Williams versus City of New York, which is a southern district case to support the theory that Du Bois and Jones, he actually ratified the alleged unconstitutional policy is completely unavailing. In Williams, there was a subordinate who wrote a letter pursuant to an official. One minute. You have one minute. In Williams, he wrote a subordinate wrote a letter pursuant to an official policy, and that was written by a policymaker. So there the district court said that it could consider the 1983 claims. But here, there were simply no factual allegations to support the claim that the municipal of municipal liability under more now. There's no allegation that at any time the appellant spoke to HR or spoke to the undersheriff or spoke to the sheriff or anyone regarding the allegations that she makes regarding preferential treatment and regarding the promotion to the corrections sergeant. And again, they're all governed by civil service law. You have to score if you go to the top three scores. And if you're not, you're not even reachable in the first place. With respect to the claim that there were 10 qualified persons and they were never promoted that also that bill, because they don't have to be qualified. They have to be reachable. Everybody who's on the list is qualified, minimally qualified. That doesn't mean they're reachable. And that doesn't mean they can promote them. So the fact that more males got promoted to corrections sergeant is not necessarily indicative of gender discrimination or of a discriminatory policy. It's really a matter of how many males are above and in the top three and how many females. And I can tell you that there are many more males corrections officers than there are females. All right. Thank you. We have your argument. Mr. Sussman, you have two minutes for rebuttal. Very much. First of all, let me address the primary issue as I see it, which is that the complaint adequately sets forth, as do the summary judgment papers, the claim that Ms. Fallou was discriminated against on the basis of her gender by being denied eight promotions between August of 2014. Just so we're clear, the promotions we're speaking about started with her in August of 14. She was reachable at that time. She was not promoted in eight males were. The males were Ryan, Marquez, Kamar, Clark, Nowicki. Then the list expired. Then there were promotions of McLeod, Paschal, and Robertson. The papers made clear that those promotions all had to be approved both by the undersheriff, and the undersheriff acknowledged that, and by the sheriff. They say that they weren't involved in decision making. There were recommendations made by Decker, who at that point in time was, in fact, the chief administrator of the facility. He reported to the undersheriff, Mr. Jones. He reported to Mr. Dubois, and those promotions had to go through that chain of command. To say these individuals weren't personally involved, they were all involved in the review of those and the approval. In fact, it's clear from Jones's deposition, he states explicitly that Dubois never gave that authority up to him or to Decker, but rather maintained that authority himself. One minute. Sorry. I'm sorry. With regard to the personal involvement, I think it's both pledged and shown in the summary judgment papers. With regard to the argument that Mr. Jones was not personally involved in decisions beyond the two that are referenced, 34A and B of the complaint both demonstrate that Jones was involved beyond those two promotions in the relevant statute of limitations time of women who were, in fact, personally associated with him and involved in intimate relationship with him with regard to 34A. I won't mention the person. She's mentioned there. To the position of sergeant, he was involved in the practice of creating that hospital environment. I think counsel's argument that that hospital environment doesn't affect Ms. Falloux is plainly wrong. She's affected by the hospital environment because she's an individual female who's not engaging in that pattern of behavior, which is necessary according to the complaint to gain promotion. So she's directly affected by it. The argument that it's not severe and pervasive doesn't make sense because if it's true that a woman must engage in that behavior in order to be promoted, it's plainly pervasive. It affects the entire work environment on a day-to-day basis because one of the things you're doing at work is to try to succeed so you can, in fact, get promoted. If you can't, it's a material condition of your employment. To say it doesn't affect her seems to me baseless. Thank you for your consideration. Thank you. We will reserve decision.